UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-02398(DSD/JJK)


HealthEast Bethesda Hospital,

        Plaintiff,

v.                                                    **ORDER**

United Commercial Travelers
of America,

        Defendant.


      Martin D. Kappenman, Esq. and Moore, Costello & Hart, 55
      East Fifth Street, Suite 1400, St. Paul, MN 55101,
      counsel for plaintiff.

      Alan G. Starkoff, Esq., and Schottenstein, Zox & Dunn,
      P.O. Box 165020, Columbus, OH 43216 and Jeffrey R. Ansel,
      Esq., Justice E. Lindell, Esq. and Winthrop & Weinstine,
      222 South Sixth Street, Suite 3500, Minneapolis, MN
      55402, counsel for defendant.


This matter is before the court on the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion.


**BACKGROUND**

This breach of contract claim arises out of a November 14, 2006, agreement between plaintiff HealthEast Bethesda Hospital ("HealthEast") and defendant United Commercial Travelers of America ("UCT"). On June 2, 2005, Nels J. Hansen ("Hansen") obtained a

Medicare Supplement Insurance policy from UCT.  UCT informed HealthEast that Hansen was covered under its policy on October 7, 2005.  HealthEast admitted Hansen to the hospital on October 13, 2005, and cared for him until his death on April 21, 2006.

On October 11, 2006, UCT received a claim from HealthEast demanding $331,893.40 for Hansen's care.  UCT referred the claim to JMAT, Inc. ("JMAT"), UCT's authorized representative, to negotiate a settlement.  On November 13, 2006, JMAT offered HealthEast $265,514.72 in satisfaction of the $331,893.40 bill, with payment to be made in ten business days.  HealthEast accepted the offer the next day.

On or about November 17, 2006, UCT requested Hansen's medical records from Burnett Medical Center, the healthcare provider Hansen used prior to applying for UCT insurance.  Upon review of these records, UCT determined that Hansen had misrepresented his health history on his June 2, 2005, insurance application.  On November 22, 2006, UCT sent a letter to Hansen's estate rescinding his policy.  Sometime thereafter, UCT informed HealthEast that it would not pay the settlement.  On April 19, 2007, HealthEast sued UCT in state court for breach of contract.  UCT removed the action to this court on May 21, 2007, and both parties now move for summary judgment.

**DISCUSSION**

I.   **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   A fact is material only when its resolution affects the outcome of the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.   See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.   The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.   See Celotex, 477 U.S. at 324.   Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.   Id. at 322-23.

## II.  Breach of Contract

UCT argues that the November 14, 2006, contract is voidable due to alleged mistakes regarding the validity of Hansen's policy and the amount UCT was obligated to pay under the policy. HealthEast argues that the contract is not voidable and that UCT breached the contract by refusing to pay the settlement amount.

A mistake is "a belief that is not in accord with the facts." Carpenter v. Vreeman, 409 N.W.2d 258, 261 (Minn. Ct. App. 1987). If both parties mistook "a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party, unless [that party] bears the risk of the mistake." Winter v. Skoglund, 404 N.W.2d 786, 793 (Minn. 1987) (citing Restatement (Second) of Contracts § 152).  If only one party makes such a mistake, the contract is still voidable, provided the mistaken party does not bear the risk of mistake and "the effect of the mistake is such that enforcement of the contract would be unconscionable or the other party had reason to know of the mistake." Olson v. Shepard, 206 N.W. 711, 712 (Minn. 1926); City of Lonsdale v. NewMech Co., No. 66-C7-03-001941, 2008 WL 186251, at *9-10 (Minn. Ct. App. Jan. 22, 2008).  A party bears the risk of mistake when the risk is allocated to him by the agreement, by the court on the ground that it is reasonable to do so, or if "he is aware, at the time the contract is made, that he has only limited

4

knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement (Second) of Contracts § 154; see Hy-Vee Food Stores v. Minn. Dep't of Health, 705 N.W.2d 181, 191 (Minn. 2005) (Restatement (Second) of Contracts used to analyze assumption of risk of mistake). The court examines evidence of mistake with particular care and only reluctantly allows a party to avoid a contract on the ground of mistake. See Gethesmane Lutheran Church v. Lutheran High Sch. Ass'n of Greater St. Paul, 258 N.W.2d 645, 649 (Minn. 1960); Restatement (Second) of Contracts §§ 152 cmt. a, 153 cmt. a.

In this case, the court assumes that the alleged mistakes occurred and materially affected basic assumptions upon which the contract was made. The November 14, 2006, contract, however, is not voidable because UCT bore the risk of the mistakes. UCT, a sophisticated party in the business of assessing risks, was in the best position to know whether Hansen's policy was valid as well as the amount UCT was obligated to pay under the policy. See Norwest Bank Minn., N.A. v. Verex Assurance, Inc., No. C8-95-2292, 1996 WL 363371, at *3 (Minn. Ct. App. July 2, 1996) (insurer bore risk of mistake because in best position to evaluate); see also Zontelli & Sons, Inc. v. City of Nashwauk, 373 N.W.2d 744, 752 (Minn. 1985) (defendant bore risk of mistake because he could have "learned of the [mistaken] requirements," and plaintiff "had no duty to investigate and ... had the right to rely on [defendant's] bid");

Beck v. Plastic Prods. Co., 412 N.W.2d 315, 319 (Minn. Ct. App. 1987).  UCT's later acquisition of the information necessary to assess the validity of Hansen's policy and the amount UCT owed demonstrates its ready access to such information.  UCT's belated investigation also suggests that UCT was aware of its limited knowledge of Hansen's policy at the time it negotiated the settlement agreement, but nevertheless proceeded with the information it had.  Unlike UCT, HealthEast had no duty to investigate the validity of Hansen's policy and had a right to rely on the representations made by UCT during the settlement negotiations.  See Zontelli & Sons, Inc., 373 N.W.2d at 752; Restatement (Second) of Contracts § 157 cmt. a ("During the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other.").  Therefore, the court determines that it is reasonable to allocate the risk of the mistakes to UCT and the November 14, 2006, contract is not voidable.  Accordingly, UCT's failure to perform under that contract constitutes a breach, and UCT is liable to HealthEast for $265,514.72, plus interest at the rate of six percent per year from November 28, 2006.  Minn. Stat. § 334.01 (2008).

**CONCLUSION**

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that

1.    Plaintiff's motion for summary judgment [Doc. No. 42] is granted.

2.    Defendant's motion for summary judgment [Doc. No. 50] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  October 16, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court